GULF, C. & S. F. RY. CO. et al. v. A. B. PATTERSON & CO.

(Court of Civil Appeals of Texas. Texarkana. Feb. 9, 1912. Rehearing Denied Feb. 22, 1912.)

1. APPEAL AND ERROR (§ 1033*)—SHIPMENT OF GOODS—DAMAGES—ACTIONS — INSTRUCTIONS.

Where, in an action against both the initial and connecting carriers for damages to shipments of poultry which were diverted from their course by the initial carrier, it conclu-

sively appeared that no partnership existed between the two carriers, and that the shipment contract was with the initial carrier alone, and was not a through contract of carriage, it was reversible error, as to the connecting carrier, to give instructions authorizing an apportionment of the damages between the two carriers unless they were partners, and authorizing a joint recovery against both if there was a joint contract for through transportation.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 4052–4062; Dec.Dig. § 1033.*]

2. CARRIERS (§ 230*)—SHIPMENT OF GOODS—DAMAGES—ACTIONS—INSTRUCTIONS — HARMLESS ERROR.

Such instructions were not prejudicial to the initial carrier, since, after deviating from the agreed route, it became responsible for all loss, whether occurring on its own or its connecting line.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

3. CARRIERS (§ 230*)—SHIPMENT OF GOODS—DAMAGES—ACTIONS—PARTIES — PEREMPTORY INSTRUCTIONS.

Where, in an action by consignors for injury to shipments of poultry, the undisputed evidence was that the shipments were owned by the consignors and not by the consignees, it was proper to refuse a peremptory instruction requested by the defendant upon the ground that the plaintiffs had no right to maintain the suit.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

4. CARRIERS (§ 76*)—SHIPMENT OF GOODS—DAMAGES—ACTIONS—PARTIES.

The consignors of a shipment, though not the owners, may maintain an action in their own name for a breach of the contract of shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 256–271; Dec. Dig. § 76.*]

5. CARRIERS (§ 228*)—SHIPMENT OF GOODS—DAMAGES — ACTIONS — EVIDENCE — SUFFICIENCY.

In an action for loss and damage to shipments of poultry which had been diverted from their course by the initial carrier, evidence held to sustain a finding that the loss and injury occurred, and that the damage was occasioned by the initial carrier, by delaying transportation, and insufficient icing.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by A. B. Patterson & Co. against the Gulf, Colorado & Santa Fé Railway Company and another. From a judgment for plaintiffs, defendants appeal. Affirmed as to defendant named, and reversed and rendered as to the other defendant.

On December 29, 1906, appellees delivered for shipment to the Gulf, Colorado & Santa Fé Railway Company at Lampasas, Tex., 69 barrels of dressed poultry, consigned to Emerson, Marlow & Co., Chicago, Ill. On January 15, 1907, appellees delivered for shipment to the same railway company at Lampasas 100 crates and 4 barrels of dressed turkeys, consigned to the same firm and same place as in the first shipment above. In the first shipment 4 of the 69 barrels

of dressed poultry delivered to the Gulf, Colorado & Santa Fé Railway Company were by it lost in the transportation, and were never delivered. In the second shipment above the Gulf, Colorado & Santa Fé Railway Company delivered its bill of lading and contracted with appellees to transport the dressed poultry in a refrigerator car from Lampasas, Tex., to Purcell, Okl., a station on its line, and to sufficiently ice the car. The bill of lading shows that appellees were the consignors and Emerson, Marlow & Co., Chicago, were the consignees. There was indorsed on the bill of lading, "ice to capacity at Temple 10% salt, and re-ice at first icing station north of Cleburne with 10% salt." The bill of lading and character of shipping contract by the Atchison, Topeka & Santa Fé Railway Company is not shown to be the same in the record. The evidence is without conflict that the Gulf, Colorado & Santa Fé Railway Company did not transport the car of poultry to Purcell as contracted, but at its own instance diverted and delivered it to the Atchison, Topeka & Santa Fé Railway Company at Pauls Valley, a station on its line 50 miles before reaching Purcell, to be transported by the Atchison, Topeka & Santa Fé Railway Company via Shawnee to consignees at Chicago. When the poultry reached the consignees, it was tainted and damaged. The appellees sued to recover for the loss and damage to the poultry, claiming that the loss was occasioned by negligence and the damage by negligent delay in transportation and by failing to sufficiently ice the car. There is evidence to sustain the verdict of the jury, which was in favor of appellees, on the issue of negligence and damage.

Terry, Cavin & Mills, A. H. Culwell, Rodman S. Cosby, and Templeton, Craddock, Crosby & Dinsmore, for appellants. J. P. Yates and L. L. Bowman, for appellees.

LEVY, J. (after stating the facts as above). The first and second assignments predicate error on certain portions of the court's charge, and will be here considered together. The last paragraph of the charge, which is assailed, directed the jury to apportion the damages between the two railway companies, unless they found the appellants "were partners in such shipments." In the previous paragraph, which is assailed, the charge authorized a recovery for appellees jointly against appellants for all the damages occasioned upon the finding by the jury that there was a joint contract for through transportation of the poultry by appellants, and that appellants or either of them were guilty of negligence in the things therein specified. The objection as made by each appellant to the charges mentioned are (1) that there is no evidence raising the issue of partnership between the appellants; and (2) that there is no evidence showing any agreement

or undertaking for a through shipment from Lampasas to Chicago on the part of the Atchison, Topeka & Santa Fé Railway Company. The jury returned a verdict jointly against the appellants for all the damages occasioned in the evidence.

[1] The contention that the evidence in the record is insufficient to show a partnership between the appellant carriers must, we think, be sustained. Each appellant further pleaded that the shipments were undertaken and made by each according to the terms of the bill of lading, which was the contract of shipment, and not as a through shipping contract from Lampasas to Chicago. It must be said, we think, that the contract of carriage as shown by the evidence was not a contract of through carriage by either appellant, and that the answer of appellants in this respect was sustained. A charge authorizing the appellees to recover against the two carriers jointly for all the damages shown in the evidence because of partnership or joint contract of through carriage was therefore reversible error as to the Atchison, Topeka & Santa Fé Railway Company.

[2] But it is not perceived that the submission to the jury of an issue of partnership or joint through carriage of the poultry should be said, in the facts of this case, to have worked any injury to the Gulf, Colorado & Santa Fé Railway Company warranting a reversal on that ground as to it. The evidence conclusively shows that the Gulf, Colorado & Santa Fé Railway Company, as pleaded by it, contracted with appellees to transport the poultry from Lampasas to Purcell; and the evidence appears in the record, without conflict, that the Gulf, Colorado & Santa Fé Railway Company at its own instance voluntarily diverted the shipments at Pauls Valley to the Atchison, Topeka & Santa Fé Railway Company to be by it forwarded direct to Chicago, and never transported the shipments to Purcell, as contracted to do. The agent of this appellant at Gainesville by his testimony admits that "this train did not go to Purcell at all, but went by Shawnee" to final destination. Pauls Valley is 52 miles south of Purcell. If this appellant contracted to transport the poultry to Purcell, as pleaded and proven, and it failed so to do and deviated from the route fixed by its contract, as it did, then it became responsible for all loss which occurred either on its own or its connecting line. 1 Hutchinson on Carriers, § 294; 4 Elliott on Railways, § 1440; Texas & P. Ry. Co. v. Eastin & Knox, 100 Tex. 556, 102 S. W. 105. In these circumstances this appellant would not be in the attitude to claim that injury resulted in the charges complained of, and the assignments as to it are overruled.

[3] The third and fourth assignments are here considered together. The appellants requested the court to peremptorily instruct the jury to return a verdict for appellants

upon the ground that appellees had no right to maintain the suit. The court in the seventh paragraph of the main charge, which is here assailed, left it to the jury to decide in the facts as to whether the appellees or the consignees were the owners of the poultry shipped, instructing them, if the consignees were the owners of the poultry, the appellees could not maintain the suit. The point made is that the evidence shows that the poultry shipped was sold and delivered by appellees to the consignees f. o. b. the cars Lampasas, and that appellees had no property in them while they were in transit, and therefore appellees had no cause of action. It could not be said that appellees sold and delivered the poultry to the consignees at Lampasas. A. B. Patterson, one of the appellees, who acted for the firm, testified: "I had an agreement with Frank Emerson at Greenville, who represented Emerson, Marlow & Co. (the consignees) at Chicago, with reference to the poultry when it arrived there. My agreement with Mr. Emerson was that if the car of poultry did not arrive in good condition, did not arrive all right as to weights and condition in Chicago, that it was to be my property at that end of the line; that it was to be sold for my account, and, if it arrived in good condition, to be their property. We had an agreed price of 13½ cents at Lampasas, and them to pay charges. I heard from the poultry when it got to Chicago immediately by wire from Emerson, Marlow & Co. That shipment of turkeys was sold by Emerson, Marlow & Co. on a commission basis for the account of A. B. Patterson & Co. (appellees). They rendered an account of sales to us." The only testimony of ownership of the poultry was that of this witness. It appears that the consignees sold such poultry as was not damaged on commission, rendered such account to appellees, and were paid such commission ' out of the sales. In the facts it could not be said that the court erred in submitting the issue and in refusing the peremptory charge.

[4] Besides, the appellees, as against appellants, had the right as consignors to maintain the suit in their own name for a breach of the contract of shipment. Railway Co. v. Smith, 84 Tex. 350, 19 S. W. 509.

[5] The fifth assignment, complaining that the verdict of the jury was against the evidence is overruled. If the Gulf, Colorado & Santa Fé Railway Company diverted the shipment from the route and point designated in the contract, as it did, then, as before stated, it became liable for all damages occurring on its own or its connecting line. That loss and damage did occur is conclusively shown. The evidence is sufficient to show that four barrels of the first shipment were received for shipment and never delivered. The only contention in this respect made by appellant was that these four barrels were never delivered in the first instance by appellees. There was ample evidence that the same were delivered for shipment by appellees to the initial carrier, and the jury found that they were. The evidence is all one way in showing that, when the second shipment reached the consignees, it was tainted and damaged. Appellant's inspector of perishable commodities at Chicago so testified. There is evidence to support the finding of the jury that the damage was occasioned through the fault of appellant by delay in transportation and by insufficient icing. According to the proof the car that contained the poultry was fully iced when the poultry was loaded, and it left Lampasas at about midnight January 15th, and reached Temple at 3:45 a. m. on January 16th. From Lampasas to Temple is 56.6 miles. When the car reached Temple, it had only 2,000 pounds of ice in the bunkers. It lay in Temple until 3:30 p. m., when it went forward on train 38. During the time the car remained in Temple it was re-iced 7,800 pounds and with 780 pounds of salt. When this re-icing was done, and why it remained in Temple nearly full 12 hours, is not shown. A jury could infer that the car remained for some hours with insufficient ice to keep the required temperature for preserving the poultry, and could have inferred that this caused the poultry to become damaged. The jury could have said the failure to move the car forward for 12 hours was negligence causing damage. It was shown that, when the car reached Shawnee, there was only 7,000 pounds of ice in the bunkers, 2,800 pounds having melted during the trip from Temple. It appears that at this place only 800 pounds of ice was put in the bunkers. If, as shown by the evidence, it required 9,800 pounds of ice in the bunkers of the car to ice it to its capacity and to get the required temperature, then the jury could have inferred that the putting in at Shawnee of only 800 pounds of ice, leaving a shortage of 2,000 pounds, was such insufficient icing of the car as to cause the damage. At Arkansas City it was re-iced to its capacity. There is no evidence that it was re-iced between this last-named point and Chicago, but it appears that when it reached Chicago the bunkers were full of ice. The assignment is overruled.

The sixth assignment is overruled.

The judgment as to the Gulf, Colorado & Santa Fé Railway Company is affirmed, and the judgment as to the Atchison, Topeka & Santa Fé Railway Company is reversed, and, because of several reasons appearing in the record, is here rendered in its favor with all costs.